On Case 15-1831, Mario Elizondo v. Catherine Bauman. Oral argument not to exceed 15 minutes per side. Sanford Shulman for the appellant. Good morning. May it please this honorable court, my name is Sanford Shulman. I represent the petitioner appellant, Mario Elizondo. I'd like to respectfully reserve two minutes for rebuttal. And I'd like to take the opportunity in oral argument to really focus on the transcripts, the text of the case as it relates to the petitioner's contention that he was denied a fair trial and due process because the trial court judge pierced the veil of impartiality. And I recognize that both sides did delve into the transcripts. I would submit that the defense petitioner did so in a straightforward manner without any type of summaries. But I think it's important to look at it. The court on four significant occasions interposed and interjected. On the first occasion, the court stopped the prosecutor in midstream, questioned the defendant during his testimony, and asked if he could explain how he could get the identification of the complainant and his wife mixed up. She asked, how could he have felt somebody kissing you? And in this case, she said, the victim in this matter weighed about how much during the time? He answers, I have no idea. She then asks the judge, but probably less than your wife. Is that correct? And he says, probably. She says, well, was she a little shorter than your wife? And then later says, she is much smaller than your wife. Is that correct? I submit that those types of questions were leading, and only a prosecutor could ask leading questions. The defense can't suggest those kind of answers. And the tone of the questions is beyond that which one would consider an unbiased judge asking. And they weren't just – What was the background to those questions that the judge might have been attempting to clarify? Was it testimony to the effect that the defendant should have known who he was kissing because the person that got in bed was on top of him or he was on top of that person? How was it that the weight of the person was germane? I mean, when you say that the judge was doing something, saying something that reflected partiality, you're not really providing any context. Yes, I agree that the judge was inquiring about the difference between the complainant, potentially, and the wife. The defense was that he didn't know who this person was. And I recognize she was asking those questions. But I think it's also important to note she didn't ask about how was the lighting. You have necrolepsy. You have all these other problems with sleep disorders. She didn't ask any of those questions. She focused really on questions that really weren't questions. And they weren't really asked, as the Court of Appeals in Michigan suggested, they weren't asked by the attorneys. The questions were from the court. And while it may have some marginal value in terms of its significance, it's the questions that were important in terms of how the jury perceived it. The second time the court interposed, again, it says, wait a minute, wait a minute. You know, you didn't feel that. You thought it was touching your, you couldn't tell if it was touching you, if the penis was touching you. And the judge then says, but you didn't feel that kiss. The Court of Appeals at least acknowledged that it was a tinge of suggestion of disbelief by the judge. But those questions are the types of questions that you would see a prosecutor ask. You didn't, but you didn't, you felt that kiss. It was not really a question. It was rhetorical. It was obviously rhetorical. You can't really answer that question. You didn't feel that. Wasn't your client provided an opportunity to answer? I mean, in and of themselves, those questions don't sound all that terribly prejudicial because they were enlisting information about the incident. Well, you know, it's sort of like when did you stop beating your wife type of question. I guess you could have an opportunity to answer that. But the Michigan Supreme Court after this case said that judicial partiality can never be held to be harmless. So when you ask a question that suggests, but you felt that kiss, it suggests that you're calling into question his veracity. You're examining him in the form of the way a prosecutor would do. And even the Court of Appeals, when they said it's with disbelief, in a case where the question is veracity and who do you believe, when the judge is taking a side by asking those questions, and then not just on one occasion or two, but in a third occasion when there's questions about a protective service worker, and the judge interjects and says, well, didn't you tell her whether or not you put your penis in her? The respondent suggests that the judge never interposed regarding any type of sexual contact in this manner, but she clearly did. And then her question is, because you believed that if you put your penis in a child, there was something wrong with that, right? That's not a question. That's a statement. That's argument. That is clearly going beyond just controlling the trial, allowing the trier of fact to make a decision, and allowing the process to go along fairly. And then yet again, the judge intervenes, always with the same kind of questions. Wait a minute. Wait a minute. But didn't you tell us previously that your wife told you about the complainant's hand on your penis? That's taking a former statement, cross-examining him on it, impeachment. And then two seconds later, she says it wasn't, the prosecutor asks, it wasn't until after you were charged that you told your wife the story? Well, pardon me for interrupting, but doesn't deference apply in this case? Deference to the questions by the court? The deference that's required under the anti-terrorism and effective death penalty case statute. Well, the case law requires that the standard is that a judge, a trial court's judge's intervention must be significant, must be adverse to the defendant to a substantial degree. I'm not sure if that directly answers your question. I mean, you have to of course give deference to the trial court. Of course you do. They're running the trial, and we do have to do that. But, you know, when a trial court exhibits disbelief of a witness and intentionally or unintentionally interjects that, there's a problem. And I think another point that's important to note is that after this trial, the Court of Appeals found that it was harmless error. And then the Supreme Court in Michigan denied leave. The federal judge denied the habeas. But almost immediately after that, the Michigan Supreme Court came out with a case of People v. Stevens. And it's our submission that the Court of Appeals, when they decided this case in the state court, they misapplied the standard. The standard is not a harmless error standard. In fact, the respondent never even addresses the case of People v. Stevens. It's a Michigan Supreme Court case. It came out, directly addressed the issues. It came out in July of 2015. But on habeas, we're trying to figure out whether, in fact, what the Michigan courts held in this case are an unreasonable application of United States Supreme Court law without regard to how the state of Michigan might view it. Both the government and I acknowledge that there's no real Supreme Court precedent in this area, except as it relates to the issues of due process, fair trial. There's cases that go back to 1933, Curcia, where the district court has to maintain the trial in a fair manner, not show bias. And so it still focuses on due process arguments and whether, as you mentioned, whether there's been an objectively unreasonable application contrary to clearly established Supreme Court precedent. All I was mentioning as it relates to the Michigan Supreme Court is that they did not apply their own standards. But we can't review that on habeas. I understand. The question is whether there has been an objectively unreasonable and contrary to clearly established Supreme Court precedent. And the case law, both by the government and I, goes to 14th Amendment issues. It goes to McVeigh v. Grant, a case that this circuit examined, whether the conduct would have reached a significant extent and be adverse to the defendant in a substantial degree. So it could still apply in this case. You can still take the entire totality of the circumstances, the totality of the transcripts, and still apply federal precedent and still find that, to a significant extent, that it was adverse to this petitioner's substantial rights. I mean, in the end, we want to just give him an opportunity to have a fair shot with the jury and let them make a decision as to the credibility. And I would submit that jurors are extremely impressioned by the conduct of a trial court judge. There's a saying that if you blink in the wrong way, they could read it. And it's possible for a court to deprive a party of a fair trial without intending to do so if the manner in which the judge conducts the case gives a plain exhibition to the jury of his own opinions. And so it's really a constitutional issue of looking at all the factors, reading the transcripts specifically, and one after another, question after question, the way the questions were posed, the manner the questions were posed. In fact, at the last series of questions, the judge makes the petitioner answer yes or no. No, answer yes or no. Sir, yes or no. Answer the question. That's cross-examination. That's a hostile tone. And I know that the Court of Appeals said it doesn't necessarily make the petitioner's version of the offense appear untrue, but it clearly shows that the judge is not asking questions to find out facts that could be exculpatory, inquire about things like what was going on in the room, how your condition may have taken an effect on the situation. It was asking questions that were already pinged with a sense of bias, tinged with a suggestion of disbelief, and more than that, it clearly led to a situation that the partiality should not be considered just harmless or subject to just a suggestion that it was not significant, and that its prejudice is significant and clearly denied him a fair trial, violated his right for due process. And I will reserve two minutes for rebuttal. Thank you. Thank you, Counsel. Good morning, Your Honors. Assistant Attorney General Scott Shimkus on behalf of the Respondent Warden, Catherine Baumann. This Court should affirm the District Court's denial of habeas relief for three reasons. First, because, Judge Clay, as you mentioned, this case does fall under AEDPA, and there is no clearly established federal law that a trial court's routine interventions during witness testimony demonstrate judicial bias such that they violate due process. Second, under the broad parameters of due process, a reasonable jurist could determine that there was no judicial bias in this case because the trial judge clarified testimony from both prosecution and defense witnesses, rendering this a fundamentally fair trial. Third, even if the judge's questions to Mr. Elizondo were tinged with disbelief as the Michigan Court of Appeals said for one of the four or five instances we're here discussing today, any error was harmless in light of the strength of the evidence, the focus of the judge's questions to Mr. Elizondo, as well as the curative jury instructions. So going to that first point, that there is no clearly established federal law, on the specific point in this case, that is fatal to Mr. Elizondo's argument. The U.S. Supreme Court has never held that a trial judge's questioning of the defendant when he elects to testify violates due process because it shows an appearance of impropriety. This Court, as recently as 2008, found that there is no such clearly established federal law. Judge Batchelder, you wrote the opinion in Raley v. Webb, 540 F. 3rd, 393, 2008. In that opinion, it says, no case has held or, more importantly, found at the Supreme Court to have held that mere appearance of bias is sufficient without something more. That's exactly what we have in this case. There are two, essentially, categories of judicial bias. There's actual bias, and then there's appearance of bias or appearance of impropriety. Mr. Elizondo has never alleged and does not allege now any actual bias in this case. He has only alleged an appearance of impropriety based on how the trial court questioned him during his testimony. But there is no clearly established federal law on that point. And as I mentioned, that alone is fatal to Mr. Elizondo's claim because, in that case, there was no clearly established federal law for the Michigan Court of Appeals to misapply or find contrary to. To the second point, that this trial was truly fundamentally fair. A review of the record in total, as due process requires us to do, due process requires this Court to look at the trial as a whole. Now, Mr. Elizondo wants to focus on the Court's questioning to him, but looking at the record as a whole, we see that this was a very interactive judge, a judge that was going to clarify testimony from any witness if it seemed unclear to the jury. We cited in our brief no fewer than almost a dozen instances where the trial court interjected for prosecution witnesses. Those appear on page IDs 406, 409, 423, 449, 458, 459, 475, and it goes on from there. For example, counsel brought up the trial court asking the defendant a yes or no question. Well, the trial court did the same thing for a prosecution witness. At one point, the witness said okay to one of the questions, and the court interposed and said, does it help, yes or no, ma'am? And the witness said yes. That appears on page ID 458. That's one of several examples of the court addressing or interjecting, rather, with both prosecution witnesses and the defense witnesses. As a whole, this was a fair trial. Finally, to the third point, any error in this case was harmless because the strength of the evidence was there. The focus of the trial court's questions had nothing to do with the central issue in this case, which was whether there was penetration. Finally, the jury received curative instructions. The evidence was strong here. Unlike a lot of criminal sexual conduct cases, we had an eyewitness in this case. Mr. Elizondo's wife walked in on him while he was assaulting this 11-year-old girl. Furthermore, he made incriminating statements to no fewer than four people, and he made a full confession to the child protective services worker in this case, admitting that he both touched and fondled this 11-year-old girl and penetrated her. Furthermore, the court's questions had nothing to do with penetration. The court's questions tried to clarify places where Mr. Elizondo was unclear. The trial court never asked about penetration, never directly asked, yes or no, Mr. Elizondo, did you penetrate her? No questions like that ever occurred. Finally, the jury instructions here were curative. The jury received instructions as they often do, both prior to testimony and after all testimony was concluded. And in both instances, the jury was told by the trial judge, if you think I have an opinion about this case, ignore that. If you think my questions reflect any opinion of this case, ignore that. Questions are not evidence. Only their answers are. For all those reasons, any error in this case was harmless. And finally, for all three of those reasons, Mr. Elizondo should be denied habeas relief, and this court should affirm the district court's denial. Unless your honors have any questions, I will rest the remainder of my brief. We do not. Thank you. Thank you, counsel. Rebuttal? Rebuttal? I'd just like to briefly note in rebuttal that the only Supreme Court precedent that I think is of any value goes back to 1927, and subsequently it's the Turner v. Ohio case. And I think there's no dispute that a right to an impartial judge is a right whose deprivation can be complained of in a federal habeas proceeding, and that while the judges have wide latitude, as I was asked during our argument, they must preserve in an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes the defendant is guilty. The respondent notes that the judge's questions were also asked in other witnesses, but I submit it was not with the same veracity, and it certainly did not have the same significance. When you're specifically asking the defendant when he's testifying questions. As it relates to questions specifically about penetration, the judge did ask, maybe it wasn't even a question. Maybe that's why the respondent feels it wasn't asked. But the judge asked, because you believe that if you put your penis in a child, there was something wrong with that, right? Maybe that's not a question. Maybe that's the crux of my entire argument. Those aren't really questions. Those are statements by a judge. And in the end, it's not really the weight of the evidence. It's whether Mr. Elizondo received a fair trial, and that's the issue. Thank you, counsel. The case will be submitted. The clerk may call the next case.